# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

THOR IAN GENSINGER,

     Petitioner,

v.                                    Case No. 8:18-cv-2824-KKM-JSS

SECRETARY, DEPARTMENT
OF CORRECTIONS,

     Respondent.

_____

## <u>ORDER</u>

Thor Ian Gensinger files a pro se petition challenging his state court conviction for robbery under 28 U.S.C. § 2254. (Doc. 1.) Having considered the timely petition (Doc. 1)[1], the response in opposition (Doc. 11), and Gensinger's reply (Doc. 14), the Court denies both the petition and a certificate of appealability.

_____

[1] A state prisoner has one year from the date his judgment becomes final to file a § 2254 petition. *See* § 2244(d)(1). This one-year limitation period is tolled during the pendency of a properly filed state motion seeking collateral relief. *See* § 2244(d)(2). Because the state appellate court per curiam affirmed Gensinger's judgment and conviction and Gensinger did not seek review in the U.S. Supreme Court, the limitation period began to run on February 24, 2016, when the time to seek review in the U.S. Supreme Court expired. (Doc. 11-2 at 246); *see* § 2244(d)(1)(A); *Chavers v. Sec'y, Fla. Dep't Corrs.*, 468 F.3d 1273, 1275 (11th Cir. 2006). On January 20, 2016, Gensinger placed in the hands of prison officials for mailing a motion for post-conviction relief. (Doc. 11-3 at 2–72.) Because the post-conviction court denied relief and the state appellate court affirmed, the post-conviction proceedings tolled the limitation period until January 10, 2017, when that mandate issued. (Doc. 11-4 at 165); *see Nyland v. Moore*, 216 F.3d 1264, 1267 (11th Cir. 2000). On October 3, 2016, Gensinger placed in the hands of prison officials for mailing a petition alleging

## I. BACKGROUND

### A. Procedural Background

Gensinger pleaded guilty to robbery, and the trial court sentenced Gensinger to a mandatory term of fifteen years in prison as a prisoner releasee reoffender. (Doc. 11-2 at 123–26.) The state appellate court per curiam affirmed the conviction and sentence without a written opinion. (Doc. 11-2 at 246.) The state court denied Gensinger's two motions for post-conviction relief without an evidentiary hearing (Doc. 11-4 at 2–19, 235–37), and the state appellate court per curiam affirmed without a written opinion. (Doc. 11-4 at 163, 319.) Also, the state appellate court denied Gensinger's two petitions alleging ineffective assistance of appellate counsel. (Docs. 11-2 at 287 and 11-4 at 206.) Gensinger's federal petition follows.

---

ineffective assistance of appellate counsel. (Doc. 11-4 at 167–204.) The properly filed petition tolled the limitation period until March 14, 2017, when the state appellate court denied the petition. (Doc. 11-4 at 206.) The limitation period ran for 12 days until March 27, 2017, when Gensinger placed in the hands of prison officials for mailing a successive motion for post-conviction relief. (Doc. 11-4 at 208–33); *see Weekley v. Moore*, 244 F.3d 874, 876 (11th Cir. 2001). Because the post-conviction court denied relief and the state appellate court affirmed, the post-conviction proceedings again tolled the limitation period until June 27, 2018, when that mandate issued. (Doc. 11-4 at 321); *see Nyland*, 216 F.3d at 1267. The limitation period ran for another 131 days until November 6, 2018, when Gensinger placed in the hands of prison officials for mailing his § 2254 petition. (Doc. 1 at 1.) Because a total of 143 days ran on the limitation period, Gensinger timely filed the petition under review.

B. Factual Background[2]

A male entered an Achieva Credit Union bank in St. Petersburg, Florida, and gave the bank teller a handwritten note stating, "No alarms, no dye packs." (Doc. 11-4 at 29, 261.) The robber then told the teller that he would kill him if the teller handed over a dye pack. (Doc. 11-4 at 261.) The teller gave the robber $2,371.00 in cash with a concealed tracking device, and the robber fled the bank on foot. (Doc. 11-2 at 59.) When police arrived shortly after, the teller provided a description of the robber. (Doc. 11-2 at 59.) An officer drove to an area north of the bank where a computer showed that the tracking device was located, saw a male walking quickly, breathing heavily, and sweating, and chased the male to a motel room across the street. (Docs. 11-2 at 59 and 11-4 at 78–79, 86–87.)

Police surrounded the motel room and demanded that the male exit. (Doc. 11-4 at 95.) The male, who was Gensinger, opened the door and surrendered. (Doc. 11-2 at 59.) During a protective sweep, a detective observed cash partly concealed in a T-shirt on the bed. (Doc. 11-2 at 60.) After obtaining a search warrant, a detective searched the motel room, recovered some of the cash from the bank, and later located the tracking device in a stack of bills hidden in a plunger in the bathroom. (Doc. 11-4 at 104–13.) The teller recognized two bills recovered from the motel room because one was a

---

[2] The factual background derives from a police report, an affidavit which supported a search warrant, and deposition testimony.

rare 1950-series twenty-dollar bill and the other was a rare ten-dollar bill from 1934. (Doc. 11-4 at 113–17.) The teller had set aside both bills in his cashier drawer before the robbery. (Doc. 11-4 at 114–16.) The detective obtained surveillance video from the bank that captured the robbery and surveillance video from a house nearby that showed Gensinger walking toward the bank before the robbery and fleeing the bank after the robbery, wearing different clothes. (Doc. 11-4 at 117–21.)

## II. <u>STANDARD OF REVIEW UNDER SECTION 2254</u>

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief under the AEDPA can be granted only if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of § 2254(d)(1), a decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). "[C]learly established Federal law" encompasses the holdings only of the United States Supreme Court "as of the time of the relevant state-court decision." *Id.* at 412. A decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

For purposes of § 2254(d)(2), a state court's findings of fact are presumed correct. *See Rolling v. Crosby*, 438 F.3d 1296, 1301 (11th Cir. 2006) ("The factual findings of the state court, including the credibility findings, are presumed to be correct . . . ."). A petitioner can rebut the presumption of correctness afforded to a state court's factual findings only by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

The AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694. As a result, to obtain relief under

the AEDPA, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (stating that "[t]he state court's application of clearly established federal law must be objectively unreasonable" for a federal habeas petitioner to prevail and that the state court's "clear error" is insufficient).

When the last state court to decide a federal claim explains its decision in a reasoned opinion, a federal habeas court reviews the specific reasons as stated in the opinion and defers to those reasons if they are reasonable. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). When the relevant state-court decision is not accompanied with reasons for the decision—such as a summary affirmance without discussion—the federal court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning." *Id.* The state may contest "the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision . . . ." *Id.*

In addition to satisfying the deferential standard of federal court review of a state court adjudication, a federal habeas petitioner must exhaust his claims by raising them in

state court before presenting them in a federal petition. *See* 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). A petitioner satisfies this exhaustion requirement if he fairly presents the claim in each appropriate state court and alerts that court to the federal nature of the claim. *Ward v. Hall*, 592 F.3d 1144, 1156 (11th Cir. 2010).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). A petitioner shows cause for a procedural default when he demonstrates "that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). A petitioner demonstrates prejudice by showing that "there is at least a reasonable probability that the result of the proceeding would have been different" absent the constitutional violation. *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). "A 'fundamental miscarriage of justice' occurs in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Id.*

## III. INEFFECTIVE ASSISTANCE OF COUNSEL STANDARD

Gensinger brings several claims for ineffective assistance of counsel under the Sixth Amendment. Under the well-known, two-part standard articulated in *Strickland v. Washington*, 466 U.S. 668 (1984), to succeed, he must show both deficient performance by his counsel and prejudice resulting from those errors. *Id.* at 687.

The first part "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* The lynchpin of this analysis is whether counsel's conduct "was reasonable considering all the circumstances." *Id.* at 688. A petitioner establishes deficient performance if "the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. A court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

The second part requires showing that the deficient performance prejudiced the defense. *Id.* at 687. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. To demonstrate prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would

have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

"The question [on federal habeas review of an ineffective assistance claim] 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.' " *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Consequently, federal petitioners rarely prevail on claims of ineffective assistance of counsel because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (quotation and citations omitted).

## IV. ANALYSIS

### A. Ground One

Gensinger asserts that trial counsel was ineffective for not requesting that the trial court hold a hearing under *Nelson v. State*, 274 So. 2d 256 (Fla. 4th DCA 1973), on Gensinger's pro se motion to discharge counsel. (Doc. 1 at 10–11.) He contends that on May 31, 2013, he moved to discharge trial counsel because of irreconcilable differences and that the trial court denied his motion without a hearing. (Doc. 1 at 10.)[3]

---

[3] Gensinger asserts the claim as trial error but contends that he raised the claim in his motion for post-conviction relief. (Doc. 1 at 10.) If strictly construed as trial error, the claim is not cognizable on federal habeas because the failure to hold a *Nelson* hearing is a violation of state law and "only noncompliance with

In his post-conviction motion, Gensinger raised similar claims, (Doc. 11-3 at 100–02, 104–05, 122), but never asserted that trial counsel performed deficiently by failing to request specifically a *Nelson* hearing for his motion filed on May 31, 2013. The Respondent nonetheless asserts that Gensinger exhausted the claim, (Doc. 11 at 19) and therefore waives that defense (although this concession of exhaustion appears inaccurate). 28 U.S.C. § 2254(b)(3). Consequently, the Court will consider the merits of the claim. *See Vazquez v. Sec'y, Fla. Dep't Corrs.*, 827 F.3d 964, 968 (11th Cir. 2016).

*Nelson* holds that "where a defendant, before the commencement of trial, makes it appear to the trial judge that he desires to discharge his court appointed counsel, the trial judge, in order to protect the indigent's right to effective counsel, should make an inquiry of the defendant as to the reason for the request to discharge." The trial judge must determine whether "there is reasonable cause to believe that the court appointed counsel is not rendering effective assistance to the defendant." *Id.* at 259. If the trial judge finds reasonable cause to believe that trial counsel is ineffective, then the trial judge must appoint substitute counsel. *Id.* at 259. If the trial judge finds no reasonable cause, then the trial

---

*federal* law [ ] renders a State's criminal judgment susceptible to collateral attack in the federal courts." *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (emphasis in original). If construed quite liberally though, the claim raised in the petition is one for an ineffective assistance of counsel claim. *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). Because Gensinger is proceeding pro se, the Court analyzes it as the latter.

judge must advise the defendant that discharge of trial counsel may not result in the appointment of substitute counsel. *Id.* at 259.

Ground One of Gensinger's petition fails. The record reveals that, on May 31, 2013, the trial court held a hearing that complies with *Nelson* after Gensinger raised his displeasure with appointed counsel. (Doc. 11-2 at 11–16.) Specifically, the transcript from that hearing shows that Gensinger informed the state trial court that "I've had a conflict with [appointed counsel] in the past and we have our conflicts now and I've wrote up a couple motions" that trial counsel allegedly "refused" to file. (Doc. 11-2 at 11.). The trial court informed Gensinger that he was, of course, allowed to hire counsel of his own choosing, and it then inquired as to what the unfiled motions concerned. (Doc. 11-2 at 11.) Gensinger listed several in response, including a motion to compel discovery from the State and a motion for a bond reduction. (Doc. 11-2 at 11–12.) After hearing from the prosecution that Gensinger committed the new offenses after being released less than six months from prison and having prior drug trafficking and possession convictions, the trial court opined that, had trial counsel filed a motion to reconsider bond, the court would have raised it, not lowered it. (Doc. 11-2 at 12.) As for the motion to compel discovery, the trial court concluded the prosecution was already complying with its discovery obligations (providing the videos, etc.) and that Gensinger's arguments about dismissal of the charges

were futile. (Doc. 11-2 at 12–13.) It told Gensinger he may file additional written motions if he wished and that he was free to represent himself. (Doc. 11-2 at 13–14.)

Because the trial court concluded that trial counsel was not performing deficiently based on the complaints lodged by Gensinger, it was not deficient for trial counsel not to move for a second *Nelson* hearing. Nor can Gensinger show prejudice, much less that either the deficiency or prejudice determination by the postconviction court was an unreasonable application of *Strickland. See Pinkney v. Sec'y, Dep't Corrs.*, 876 F.3d 1290, 1297 (11th Cir. 2017) ("[A]n attorney will not be held to have performed deficiently for failing to perform a futile act, one that would not have gotten his client any relief."). (Doc. 11-4 at 6–8.)]

Ground One is denied.

## B. Ground Two

Gensinger asserts that trial counsel was ineffective for not requesting that the trial court hold a *Nelson* hearing on Gensinger's second and third pro se motions to discharge counsel and for failing to request a hearing under *Faretta v. California*, 422 U.S. 806 (1975), on his pro se motion to represent himself. (Doc. 1 at 12–14.) Gensinger contends

12

that he moved to discharge counsel on June 5, 2013, and on August 1, 2013, and asserts that the trial court never held a hearing on either motion. (Doc. 1 at 12.)[4]

Gensinger raised this claim in ground four and ground six of his motion for postconviction relief (Doc. 11-3 at 100–02, 104–06), and the postconviction court denied the claim. (Doc. 11-4 at 6–8.) That court concluded that Gensinger failed to show prejudice under *Strickland* because the trial court appointed Gensinger new counsel after he filed both motions to discharge counsel. (Doc. 11-4 at 6–8.) It also determined that (1) on August 1, 2013, Gensinger moved to discharge James Mitchell, (2) in October 2013 David Moran represented Gensinger, (3) in December 2013 Brian Pingor represented Gensinger, and (4) at sentencing Benjamin DeBerg represented Gensinger. (Doc. 11-4 at 7, 8.) The state court further determined that, in his August 1, 2013 motion, Gensinger specifically stated that he did not want to represent himself. (Doc. 11-4 at 8.)

The state court record confirms that Gensinger moved to discharge James Mitchell on June 5, 2013, (Doc. 11-2 at 19–20), and on August 1, 2013, (Doc. 11-2 at 31–33), and that the trial court appointed three different attorneys to represent Gensinger

---

[4] Gensinger asserts the claim as trial error but contends that he raised the claim in his motion for post-conviction relief. (Doc. 1 at 12.) Like Ground One above, if strictly construed as trial error, the claim is not cognizable on federal habeas because the failure to hold a *Nelson* hearing is a violation of state law and "only noncompliance with *federal* law [ ] renders a State's criminal judgment susceptible to collateral attack in the federal courts." *Wilson*, 562 U.S. at 5 (emphasis in original). If construed quite liberally though, the claim raised in the petition is one for an ineffective assistance of counsel claim. *See Haines*, 404 U.S. at 520–21. Because Gensinger is proceeding pro se, the Court again analyzes it as the latter.

after he filed both motions, (Doc. 11-4 at 41, 71, 72). In a handwritten supplement attached to the August 1, 2013 motion, Gensinger stated: "I do not wish to go pro se but I feel I cannot get competent legal representation from Mr. Mitchell. Please reassign me to another public defender or regional counsel." (Doc. 11-4 at 69.) Only a clear and unequivocal request for self-representation triggers the requirement for a *Faretta* hearing. *Gill v. Mecusker*, 633 F.3d 1272, 1294 (11th Cir. 2011). The postconviction court concluded that Gensinger disclaimed a desire to self-representation, and he fails to prove by clear and convincing evidence that that factual determination was incorrect. 28 U.S.C. § 2254(e)(1). And Gensinger has also fails to show the postconviction court made an unreasonable determination of prejudice.

If the trial court had granted the motion to discharge counsel, the trial court would have appointed Gensinger new counsel. *Nelson*, 274 So. 2d 258–59. On June 5, 2013, Gensinger filed another document titled "Motion for Determination of Conflict" (Doc. 11-2 at 22–24) and alleged that an actual conflict arose because the public defender's office represented a material witness in Gensinger's case. On December 4, 2013, the public defender's office moved to withdraw representation because of an ethical conflict (Doc. 11-2 at 48), and the trial court granted the motion and appointed regional counsel to represent Gensinger. (Doc. 11-2 at 49.)

14

Because the trial court appointed new counsel—the relief he sought—and Gensinger did not insist on proceeding to trial with newly appointed counsel, Gensinger cannot show that the outcome would have changed, namely, that he would not have pleaded guilty and would have proceeded to trial. *See Strickland*, 466 U.S. at 692 ("Prejudice is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance." (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980)); *Lee v. United States*, 137 S. Ct. 1958, 1965 (2017) ("[W]hen a defendant claims that his counsel's deficient performance deprived him of a trial by causing him to accept a plea, the defendant can show prejudice by demonstrating a 'reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'") (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

Lastly, *Nelson* does not require counsel to request a hearing on a defendant's pro se motion asserting that counsel performs deficiently. *Nelson* requires the trial judge to make an inquiry. *Nelson*, 274 So. 2d at 258 ("[W]here a defendant, before the commencement of trial, makes it appear to the trial judge that he desires to discharge his court appointed counsel, *the trial judge*, in order to protect the indigent's right to effective counsel, should make an inquiry of the defendant as to the reason for the request to discharge." (emphasis

added)). Because Gensinger failed to demonstrate deficient performance or prejudice, the postconviction court did not unreasonably apply *Strickland*.

Ground Two is denied.

## C. Ground Three

Gensinger asserts that the trial court violated his Fourth Amendment right against unreasonable searches and seizures by denying his motion to suppress evidence seized through a search warrant. (Doc. 1 at 14.) He contends that the affidavit in support of the warrant was defective because it contained material misstatements and failed to list his name as a suspect. (*Id.*)

Gensinger raised the claim in a pretrial motion to suppress (Doc. 11-2 at 56–61), and the trial court held a hearing where the detective who signed the affidavit in support of the warrant testified. It then denied the motion, concluding that "there was PC" and "that there's [nothing] that was in error in the affidavit or that was misleading in the affidavit or that should be taken out of the affidavit." (Doc. 11-2 at 109–10.)

Gensinger raised the suppression claim as his first issue on direct appeal (Doc. 11-2 at 118–95), the State responded to the merits of the claim (Doc. 11-2 at 213–22), and the state appellate court affirmed without a written opinion. (Doc. 11-2 at 246.)

"[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief

16

on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494 (1976) (footnote omitted). "'[F]ull and fair consideration' in the context of the Fourth Amendment includes 'at least one evidentiary hearing in a trial court and the availability of meaningful appellate review when there are facts in dispute, and full consideration by an appellate court when the facts are not in dispute.'" *Bradley v. Nagle*, 212 F.3d 559, 565 (11th Cir. 2000) (citing *Caver v. Alabama*, 577 F.2d 1188, 1191 (5th Cir. 1978)).

Because the trial court held an evidentiary hearing on Gensinger's motion to suppress, heard testimony by the detective who drafted the affidavit, and denied the claim after making explicit findings of fact that there were no misstatements or omissions, and the state appellate court provided Gensinger meaningful review on appeal, his claim is barred by *Stone*. *Tukes v. Dugger*, 911 F.2d 508, 514 (11th Cir. 1990) (holding that a bar under *Stone* requires the trial court "to make explicit findings on matters essential to the fourth amendment issue" if the state appellate court issues a summary affirmance).[5]

Ground Three is denied.

---

[5] Generally, an unconditional guilty plea waives all non-jurisdictional defects in the proceeding. *See Scott v. Wainwright*, 698 F.2d 427, 429 (11th Cir. 1983). Because Gensinger conditioned his guilty plea on his right to appeal the order denying his motion to suppress (Doc. 11-2 at 141), Gensinger did not waive the right to challenge issue by pleading guilty. *Tucker v. State*, 174 So. 3d 485, 487 (Fla. 4th DCA 2015).

### D. Ground Four

Gensinger asserts that trial counsel was ineffective for refusing the prosecutor's plea offer on Gensinger's behalf. (Doc. 1 at 16.) Gensinger contends that the prosecutor offered 48.4 months for his guilty plea, and on April 29, 2013, he, trial counsel, and the prosecutor signed a form memorializing that agreement. (*Id.*) He contends that trial counsel subsequently told the prosecutor that Gensinger no longer wanted to plead guilty, even though Gensinger still wanted to accept the offer. (*Id.*)

Respondent asserts that the claim is procedurally barred. (Doc. 11 at 25–26.) Gensinger raised the claim in his second motion for postconviction relief (Doc. 11-4 at 211–15), and the postconviction court dismissed the motion as successive because Gensinger "[did] not explain why [the] claim could not have been raised in his earlier motion." (Doc. 11-4 at 235–36.) In the alternative, the postconviction court denied the claim on the merits. (Doc. 11-4 at 236–37.)

Because the postconviction court dismissed the claim on an adequate and independent state procedural ground, the claim on federal habeas is procedurally defaulted. *Bailey v. Nagle*, 172 F.3d 1299, 1304 (11th Cir. 1999); *Whiddon v. Dugger*, 894 F.2d 1266, 1267–68 (11th Cir. 1990). Even though the postconviction court alternatively considered the merits of the claim, the ruling clearly and expressly rested on the state law procedural ground. *Bailey*, 172 F.3d at 1305 (citing *Harris v. Reed*, 489 U.S. 255, 264 n.10

(1989)). Because Gensinger fails to demonstrate either cause and prejudice or actual innocence to excuse the procedural default (Doc. 14 at 7), the claim is barred from federal review, *see Aldridge v. Dugger*, 925 F.2d 1320, 1326 (11th Cir. 1991).

Ground Four is denied.

### E. Ground Five

Gensinger asserts that trial counsel was ineffective for not adopting his pro se demand for a speedy trial filed on August 1, 2013, his pro se notice of expiration of speedy trial filed on November 4, 2013, and his pro se motion to discharge from prosecution filed on November 25, 2013. (Doc. 1 at 19.) He contends that he told the trial judge that he wanted to discharge counsel, proceed pro se, and demand a speedy trial, but the trial judge never ruled on his motions. (*Id.*)[6]

The postconviction court concluded that Gensinger failed to demonstrate deficient performance and prejudice and denied the claim. (Doc. 11-4 at 6.) In his motion for post-conviction relief, Gensinger contended that the main witness whose testimony supported his defense (his girlfriend who was admittedly addicted to drugs and therefore susceptible

---

[6] Gensinger asserts the claim as trial error but contends that he raised the claim in his motion for post-conviction relief. (Doc. 1 at 19–20.) Like Grounds One, Two, and Three, if strictly construed as trial error, the claim is not cognizable on federal habeas because the claim is based on Gensinger's speedy trial right under state law and "only noncompliance with *federal* law [ ] renders a State's criminal judgment susceptible to collateral attack in the federal courts." *Wilson*, 562 U.S. at 5 (italics in original). If liberally construed, the claim raises an ineffective assistance of counsel claim. *See Haines*, 404 U.S. at 520–21. Similar to the above analysis, the Court will construe liberally here.

to overdosing) died after he filed the demand for a speedy trial. (Doc. 11-3 at 101–02.) The postconviction court concluded that trial counsel could not have known that the witness would die simply because Gensinger told him she was a drug addict, and counsel's performance is not evaluated with the benefit of hindsight. (Doc. 11-4 at 6.) Because "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time," the postconviction court did not unreasonably apply *Strickland*'s performance prong. *Strickland*, 466 U.S. at 689.

In his motion, Gensinger contended that the witness would have testified that the bank teller helped plan the robbery and gave his girlfriend the rare bills recovered from the motel room. (Doc. 11-3 at 94–95.) He further contended that his girlfriend would have testified that the bank teller gave Gensinger the tracking device to ensure Gensinger's arrest because the bank teller wanted to begin a relationship with Gensinger's girlfriend. (Doc. 11-3 at 95.) The postconviction court concluded that the witness's testimony would not have supported a successful defense and thus no prejudice was shown. The prosecutor would have easily impeached Gensinger's girlfriend for bias had she testified and her proposed narrative was "incredible" given the teller's testimony that, after Gensinger robbed him and threatened to kill him, the teller "freaked out," placed the tracking device

in the money, activated a silent alarm, and told a security guard to lock the door. (Doc. 11-4 at 4, 6.)

"[A] petitioner's own assertions about whether and how a witness would have testified are usually not enough to establish prejudice from the failure to interview or call that witness." *McKiver v. Sec'y, Fla. Dep't Corrs.*, 991 F.3d 1357, 1365 (11th Cir. 2021). In his deposition, the teller testified, "While I was preparing the cash, the robber kept repeating, you know, 'Don't put any dye packs in the cash, don't put any dye packs in the cash, or I'm going to kill you.' And that certainly, you know, did freak me out." (Doc. 11-4 at 29.) He further testified that he placed a tracking device in the money, activated a silent alarm underneath the counter at the bank, and shouted to a security guard, "Lock the door, lock the door, I just got robbed." (Doc. 11-4 at 29–30.) Assuming the teller had participated in the robbery, he would not have placed the tracking device in the money and contacted police. By doing so, the teller led police to the location of the proceeds of the robbery and rendered the robbery fruitless. Also, the teller led police to the location of Gensinger, an accomplice who could have cooperated with police in exchange for leniency and informed police about the teller's involvement. Gensinger's girlfriend would have also suffered impeachment for bias given her romantic relationship with Gensinger. § 90.608(2), Fla. Stat. Gensinger fails to rebut the prejudice determination.

Consequently, Gensinger could not show a reasonable probability that he would have gone to trial instead of pleading guilty if trial counsel had demanded a speedy trial so that Gensinger's girlfriend could testify for the defense. The state court did not unreasonably apply *Strickland*.[7]

Ground Five is denied.

## IV. <u>CERTIFICATE OF APPEALABILITY</u>

A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Instead, a district court or court of appeals must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To obtain a COA, Gensinger must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Gensinger has not made the requisite showing. Finally, because Gensinger is not entitled to a COA, he is not entitled to appeal in forma pauperis.

---

[7] In his reply, Gensinger asserts that appellate counsel refused to raise this issue on direct appeal. (Doc. 14 at 10.) The claim is both facially deficient and waived because Gensinger raised the claim for the first time on reply. *See Borden v. Allen*, 646 F.3d 785, 810 (11th Cir. 2011); *Herring v. Sec'y, Dep't Corrs.*, 397 F.3d 1338, 1342 (11th Cir. 2005).

It is therefore **ORDERED** that Gensinger's Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**. The **CLERK** is directed to enter judgment against Gensinger and in Respondents' favor and to **CLOSE** this case.

**ORDERED** in Tampa, Florida, on March 8, 2022.

Kathryn Kimball Mizelle
United States District Judge